1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 JEFFERY A. RING,                              CASE NO.  1:03-cv-6436 TAG

12
                        Plaintiff,          MEMORANDUM DECISION AND ORDER
13                                           ON PLAINTIFF'S APPEAL FROM
                                             ADMINISTRATIVE DECISION
14         _____vs.
                                             ORDER DIRECTING THE CLERK TO
15                                           ENTER JUDGMENT IN FAVOR OF
   JO ANNE B. BARNHART,                      DEFENDANT AND AGAINST PLAINTIFF
16 Commissioner of Social Security,

17
                        Defendant.
18 _____/

19         Plaintiff Jeffery A. Ring ("claimant" or "plaintiff") seeks judicial review of an administrative

20 decision denying his claim for disability benefits under the Social Security Act ("Act").  Pending

21 before the Court is claimant's appeal from the administrative decision of the Commissioner of Social

22 Security ("Commissioner").  Claimant filed his complaint on October 15, 2003, and his opening

23 brief on July 28, 2004.  The Commissioner filed her opposition to the appeal on August 30, 2004.

24 Claimant filed a reply brief on September 14, 2004.

25         Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed

26 before a United States Magistrate Judge, and, by an order dated April 1, 2004, this action was

27 assigned to the United States Magistrate Judge for all further proceedings.

28 ///

1

**JURISDICTION**

        On October 12, 2000, claimant filed applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"), alleging a disability onset of February 1, 1997, due to mental problems, hepatitis B and C, and hearing voices. (Administrative Record ("AR") 90-91, 96). The applications were denied initially and on reconsideration. (AR 69-73, 75-78).

        After timely requesting a hearing, claimant appeared before Administrative Law Judge ("ALJ") William C. Thompson on May 15, 2002, at which time he heard testimony from claimant and a vocational expert, William Wetzel. (AR 27-52). On July 11, 2002, the ALJ issued a decision finding that claimant was not disabled. (AR 16-26). The Appeals Council denied a request for review on August 15, 2003. (AR 4-6). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

        The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was previously entitled to a period of disability and disability insurance benefits. However, due to a change in the law, his disability was found to have ceased on December 31, 1996, because alcoholism was a contributing factor material to the previous determination of disability. (AR 16).

        Claimant was born on September 6, 1953, making him 48 years old on the date of the ALJ's decision. (AR 31, 26). Claimant indicated he has an eleventh grade education and his past relevant work experience includes work as a janitor for at least 21 years. (AR 31, 101, 34, 97). He testified that he stopped working in 1992. (AR 33). Claimant indicates that he stopped working, and can no longer work, because he has problems from his hepatitis (weakness and dizziness), he has a loss of hearing in his left ear and has pain in his lower back and hip. (AR 34-36). He stated that he "can't function mentally" and has a constant buzzing in his left ear. (AR 36).

        At the administrative hearing held on May15, 2002, claimant stated that he stands 5'11" tall, weighs 180 pounds and lives in a house with his wife and three children. (AR 32-33). He testified that he contracted hepatitis, about 15 years prior to the hearing, by taking the intravenous drugs of

cocaine and speed.  (AR 36).  However, he further testified that he quit using drugs about 10 years ago and quit drinking alcohol two years ago.  (AR 38).  He continues to smoke a pack of cigarettes per day.  (AR 38).

Claimant testified that he has difficulty with walking and standing, because his hip gives out on him, and he is only able to walk about one block and stand for about 10 minutes at one time.  (AR 37).  Claimant also stated that he has difficulty sitting and can only sit about 45 minutes before having to move around.  (AR 37-38).  He testified that he can lift about 35 to 40 pounds.  (AR 38).

When questioned by his attorney, claimant indicated that, while in school, he was slow in reading and had special instruction for that area of learning.  (AR 39).  He testified that he also had difficulty in math while in high school.  (AR 39).  He indicated that his wife currently handles their funds.  (AR 40).

Claimant testified that he has difficulty sleeping during the night, sometimes having bad dreams of hurting others or of being hurt.  (AR 41).  He indicated that he also has night sweats and wakes up with a "soaking wet pillow and sheets."  (AR 45).  Claimant testified that he does not like to mingle with others and gets irritated or "worked up" easily.  (AR 41).  He stated that he does not like to be around too many people and that crowds and children make him nervous.  (AR 43).  He testified that when he is around a lot of people, their talking creates "a lot of noise going through [his] head" which irritates claimant.  (AR 45).  He stated that he also has difficulty maintaining concentration, gets frustrated and often loses interest.  (AR 43-44).

A vocational expert, William Wetzel, also testified at the administrative hearing.  (AR 46-51).  Mr. Wetzel indicated that claimant's past relevant work as a residential cleaner is classified as medium exertion work.  (AR 46).  The ALJ asked Mr. Wetzel if there were jobs available for an individual with claimant's age, education and work experience combined with being able to stand, walk or sit without restriction, able to lift a maximum of 50 pounds occasionally and 25 pounds frequently, able to bend, stoop, twist, squat, kneel and crawl only occasionally, and not capable of climbing or working at heights or around hazardous moving machinery.  (AR 46).  In addition, the hypothetical individual has poor hearing in the left ear and borderline intellect, restricting him to work involving only simple instructions and one and two step processes, should be relatively

3

1   restricted from contact with the general public and co-workers, and can work in the presence of

2   others but should not be part of a cooperative work process or a work team.  (AR 46).  Given this

3   hypothetical, Mr. Wetzel testified that the individual could perform claimant's past relevant work as

4   a residential cleaner; moreover, the individual would be able to perform the work of a hand

5   packager, automobile detailer, hotel/motel housekeeper, and small parts assembly worker.  (AR 46-

6   47).

7          With the added mental limitations as delineated by Dr. Edwards, Mr. Wetzel opined these

8   limitations would not preclude the hypothetical individual's performance of claimant's past relevant

9   work as a residential cleaner, nor would it preclude work as a hand packager, automobile detailer,

10  hotel/motel housekeeper, and small parts assembly worker.  (AR 47).

11         On cross-examination, Mr. Wetzel indicated that if the hypothetical individual had the added

12  limitations of low threshold for frustration, meaning that he would have to avoid all but the least

13  stressful types of jobs and/or work activities, there would be no work available for such an individual

14  if low threshold for frustration meant he "often has outbursts of behavior."  (AR 48).

15                        **SEQUENTIAL EVALUATION PROCESS**

16         The Social Security Act defines "disability" as the "inability to engage in any substantial

17  gainful activity by reason of any medically determinable physical or mental impairment which can be

18  expected to result in death or which has lasted or can be expected to last for a continuous period of

19  not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

20  that a claimant shall be determined to be under a disability only if his impairments are of such

21  severity that claimant is not only unable to do his previous work but cannot, considering claimant's

22  age, education and work experiences, engage in any other substantial gainful work which exists in

23  the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

24         The Commissioner has established a five-step sequential evaluation process for determining

25  whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged

26  in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).

27  If he is not, the decision maker proceeds to step two, which determines whether claimant has a

28  medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

4

1   If claimant does not have a severe impairment or combination of impairments, the disability

2   claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

3   compares claimant's impairment with a number of listed impairments acknowledged by the

4   Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

5   416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed

6   impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one

7   conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines

8   whether the impairment prevents claimant from performing work he has performed in the past.  If

9   claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e),

10  416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines

11  whether he is able to perform other work in the national economy in view of his age, education and

12  work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See, Bowen v. Yuckert, 482 U.S. 137

13  (1987).

14  The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement

15  to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is

16  met once a claimant establishes that a physical or mental impairment prevents him from engaging in

17  his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant

18  can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the

19  national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.

20  1984).

21  **STANDARD OF REVIEW**

22  Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,

23  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

24  the determination is not based on legal error and is supported by substantial evidence.  See, Jones v.

25  Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

26  F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

27  contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is

28  not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v.

5

1    Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more

2    than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

3    than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

4    Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

5    "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

6    Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

7    conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

8    Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as

9    a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

10   877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

11           It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson,

12   402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold

13   the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a

14   decision supported by substantial evidence will still be set aside if the proper legal standards were

15   not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and

16   Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support

17   the administrative findings, or if there is conflicting evidence that will support a finding of either

18   disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812

19   F.2d 1226, 1229-1230 (9th Cir. 1987).

20                                        **ALJ'S FINDINGS**

21           The ALJ found at step one that claimant has not engaged in substantial gainful activity since

22   February 1, 1997.  (AR 17).  At step two, the ALJ determined that claimant has severe impairments

23   as a result of hepatitis, borderline intellectual functioning, and depression, but that he does not have

24   an impairment or combination of impairments listed in or medically equal to one of the Listings

25   impairments.  (AR 17-19).  The ALJ noted that although claimant alleged that he suffered from

26   arthritis, claimant did not meet his burden of establishing the existence of the medically determinable

27   impairment of arthritis.  (AR 17).  The ALJ therefore concluded that the medical evidence did not

28   support claimant's allegation that he suffered from arthritis.  (AR 17).

1   After considering all of the evidence, the ALJ concluded that claimant's allegations were not

2   wholly credible.  (AR 22).  The ALJ determined that claimant has the residual functional capacity to

3   perform all work related activities except that he can lift and carry only up to 50 pounds occasionally

4   and up to 25 pounds frequently, can only occasionally climb, balance, stoop, kneel, crouch and

5   crawl, must avoid unprotected heights and hazardous, moving machinery, cannot perform tasks that

6   require hearing in both ears, can perform only jobs that consist of one and two-step processes that

7   require only simple instructions, must have relatively restricted contact with the public and with co-

8   workers, and can work in the presence of others, but should not be part of a cooperative process or

9   work team.  (AR 22-23).

10   Based on the vocational expert's testimony, and given claimant's residual functional

11   capacity, the ALJ found that claimant could perform his past relevant work as a janitor, as well as

12   other jobs existing in significant numbers in the national economy, such as hand packager, auto

13   detailer, hotel/motel housekeeper, and small parts assembler.  (AR 23-24).  Moreover, the ALJ

14   concluded that, based on claimant's residual functional capacity, age, education and work

15   experience, Medical Vocational Rule 203.25 directed a finding that he was not disabled.  (AR 23-

16   24).  Accordingly, the ALJ determined that claimant was not disabled within the meaning of the

17   Social Security Act.  (AR 24-26).

18   **ISSUES**

19   Claimant contends that the Commissioner erred as a matter of law in this case.  Specifically,

20   he argues that:

21   1.  The record indicates that claimant's condition meets the Listing for mental retardation

22   (Listing 12.05C);

23   2.  The ALJ erred by failing to fully and fairly develop the mental health record; and

24   3.  Substantial evidence does not support the ALJ's mental residual functional capacity

25   finding.

26   This court must uphold the Commissioner's determination that claimant is not disabled if the

27   Commissioner applied the proper legal standards and there is substantial evidence in the record as a

28   whole to support the decision.

7

**DISCUSSION**

**A.  New Evidence**

In claimant's opening brief, he presents new evidence from an examining physician, Robert L. Morgan, Ph.D., dated October 17, 2003, and April 27, 2004.  (Court Doc. 15, Exh. 2).  Claimant asserts that this new and material evidence supports the reopening of the prior ALJ decision.  (Court Doc. 15).

42 U.S.C. § 405(g) provides for remand where new evidence is material and there is good cause for the claimant's failure to incorporate the evidence in a prior proceeding.  Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).  To meet the materiality requirement, the new evidence must bear directly and substantially on the matter.  Id.  If new information surfaces after the Commissioner's final decision, and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.  Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984).

Here, after the ALJ denied claimant's claim, he appealed to the Appeals Council.  The Appeals Council denied the claimant's request for review on August 15, 2003.  (AR 4-6).  However, it is apparent that claimant failed to submit this new evidence to the Appeals Council.  The new evidence consists of medical reports prepared by Dr. Morgan, dated October 17, 2003, and April 27, 2004, that allegedly show that claimant has mental deficiencies which rise to the level of meeting Listing 12.05C.  (Court Doc. 15).  Claimant, however, offers no reason why he did not solicit this information from Dr. Morgan earlier.  Nor does claimant tell us why he did not ask the Appeals Council to consider new evidence as to claimant's mental deficiencies.  The obvious explanation is that when claimant failed to succeed on his disability claim in the agency level, he sought out a new expert witness who might better support his position.  The "good cause" requirement would "be meaningless if such circumstances were sufficient to allow introduction of new evidence."  Allen v. Secretary of Health and Human Services, 726 F.2d 1470, 1473 (9th Cir. 1984).

Even if claimant was able to show that good cause existed for submitting the medical reports after the final decision of the Commissioner, the evidence is not sufficiently material to compel a remand to the ALJ.  Only if the claimant's new evidence is material, and relates to the period on or

1   before the date of the ALJ's decision, should the Court consider the ALJ's decision in light of the

2   new evidence.  New evidence is material if there is a reasonable possibility that it would have

3   changed the outcome of the ALJ's determination.  <u>Booz v. Secretary of Health and Human Serv.</u>,

4   734 F.2d 1378, 1380 (9th Cir. 1984).  To meet the materiality standard, the new evidence must bear

5   directly and substantially on the matter in dispute.  <u>Ward v. Schweiker</u>, 686 F.2d 762, 764 (9th Cir.

6   1982).

7     In order to establish disability, claimant must prove he was disabled, for purposes of DIB, by

8   December 31, 2001, the date claimant was last insured, and, for SSI benefits, by July 11, 2002, the

9   date of the ALJ's decision.  The medical reports at issue were drafted on October 17, 2003, and April

10  27, 2004; over one year following the ALJ's July 2002 decision.  There is no clear showing that the

11  new evidence submitted by claimant relates to the relevant time period, and, in fact, a review of the

12  reports indicates that they relate to a time subsequent to the date of the ALJ's decision.  To be

13  material, evidence must be related to the time period at issue.  <u>Cotton v Bowen</u>, 799 F.2d 1403, 1409

14  (9th Cir. 1986).  The undersigned finds that the new evidence submitted by claimant did not concern

15  the period of time at issue in this case and is thus immaterial.

16    Since claimant fails to meet the materiality and "good cause" requirements, the undersigned

17  declines to consider the newly presented evidence provided in claimant's opening brief.  Plaintiff is,

18  however, free to file a new application for benefits based on any period of disability that may have

19  commenced after the ALJ's decision was issued.  New evidence that indicates a recent deterioration

20  of a condition may support a new application for benefits, but it does not meet the standard for a new

21  evidence remand.  <u>Ward v. Schweiker</u>, 686 F.2d 762, 764-765 (9th Cir. 1982).

22  **B.  Listing 12.05C**

23    Claimant contends that the ALJ erred at step three of the sequential evaluation process.

24  (Court Doc. 15).  Specifically, claimant asserts that his mental condition meets the criteria of section

25  12.05 of the Listing of Impairments.  (Court Doc. 15).  Listing 12.05 deals with mental retardation

26  characterized as significantly subaverage general intellectual functioning with deficits in adaptive

27  functioning initially manifested during the developmental period; i.e., the evidence demonstrates or

28  supports onset of the impairment before age 22.  20 C.F.R. § 404, Subpt. P, App. 1.

1      At step three, the ALJ considered Listing 12.05 and found that none of claimant's

2    impairments medically met or equaled the criteria for this Listing.  (AR 18).  The ALJ, noting that no

3    medical expert has found that claimant's impairments are equivalent in medical severity to a Listing

4    impairment, specifically concluded that claimant's borderline intellectual functioning did not result

5    in the IQ scores required by the Listing.  (AR 18).

6      It is claimant's responsibility to prove that he is disabled at step three of the sequential

7    evaluation process.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  The claimant bears the burden of

8    establishing that his impairments satisfy the requirements of a Listings impairment.  <u>Tackett v.</u>

9    <u>Apfel</u>, 180 F.3d 1094, 1098-1099 (9th Cir. 1999).  While the Commissioner appears to concede that

10    claimant "may have met the test score criteria of 12.05(C) with a full scale IQ score of 70" (Court

11    Doc. 16, p. 7), the undersigned finds that second prong of the two-pronged test for Listing 12.05C is

12    not met.  Subsection C of Listing 12.05 provides that the required level of severity for the disorder

13    exists when (1) the individual has a valid verbal, performance, or full scale IQ of 60 through 70, and

14    (2) the individual has a physical or other mental impairment imposing an additional and significant

15    work-related limitation of function.

16      As noted by both parties, January 10, 2001 test results from examining medical professional,

17    Wendy M. McCray, Ph.D., reveal that claimant obtained a full scale IQ of 70, thus meeting the

18    criteria for the first prong of Listing 12.05C.  (AR 158-162).  However, claimant fails to present

19    adequate evidence that the limitations he suffers impose additional significant work related

20    limitations of function.  Therefore, the second prong of the Listing is not met.

21      Although Dr. McCray reported claimant had a full scale IQ of 70 (AR 161), she additionally

22    opined that claimant's ability to relate to others in an appropriate manner, including co-workers,

23    supervisory personnel, and the general public, was unimpaired, and his ability to maintain the

24    appropriate level of concentration, pace, and persistence necessary to perform a one or two-step

25    simple repetitive task was unimpaired (AR 162).  Dr. McCray's findings are supported by the record

26    evidence which displays that claimant was capable of maintaining employment for 20 plus years,

27    was able to care for his own personal needs and had a driver's license.  (AR 97, 159).

28    ///

1    Moreover, as noted by the ALJ, no medical professional of record found that claimant's

2    impairments are equivalent in medical severity to a Listings impairment. (AR 18). For instance,

3    state agency reviewing physicians found that the Listings were not met or equaled. (AR 171-177,

4    186-193). On February 7, 2001, state agency reviewing physician Mario Morando, M.D., completed

5    a psychiatric review technique. (AR 171-175). His medical disposition was based on Listings 12.04

6    (affective disorders), 12.05 (mental retardation), and 12.08 (personality disorders). (AR 171).

7    Dr. Morando opined that claimant had mild restrictions of activities of daily living, moderate

8    difficulties in maintaining social functioning, and moderate to mild difficulties in maintaining

9    concentration, persistence or pace. (AR 172). He additionally filled out a mental residual functional

10   capacity assessment form indicating that claimant was not significantly limited in all categories

11   except for moderate limitations in his ability to understand, remember and carry out detailed

12   instructions, to work in coordination with or proximity to others without being distracted by them

13   and to interact appropriately with the general public. (AR 175-176). Dr. Morando specifically

14   indicated that claimant is capable of performing sustained work related tasks away from the public.

15   (AR 177). Another reviewing state agency physician completed a psychiatric review technique on

16   March 29, 2001. (AR 186-190). The medical disposition was based on Listings 12.04 (affective

17   disorders) and 12.09 (substance addiction disorders) in remission. (AR 186). Next to Listing 12.05

18   on the form, the reviewing physician indicated that claimant had a borderline IQ. (AR 186). It was

19   determined that claimant had mild restrictions of activities of daily living, moderate difficulties in

20   maintaining social functioning, and mild difficulties in maintaining concentration, persistence or

21   pace. (AR 188). A mental residual functional capacity assessment form was also completed,

22   indicating that claimant was not significantly limited in all categories except for moderate limitations

23   in his ability to understand, remember and carry out detailed instructions, to interact appropriately

24   with the general public, to get along with coworkers or peers without distracting them or exhibiting

25   behavioral extremes, to be aware of normal hazards and to take appropriate precautions and set

26   realistic goals or make plans independently of others. (AR 191-192).

27   The findings of the above medical professionals are consistent with the ALJ's findings that

28   claimant's borderline intellectual functioning and residual functional capacity limits his performance

11

1    to jobs that consist only of one and two-step processes that require only simple instructions, he must

2    have relatively restricted contact with the public and with co-workers, and he can work in the

3    presence of others, but should not be part of a cooperative process or work team.  (AR 22-23).

4    However, they do not describe a person who has significantly subaverage general intellectual

5    functioning with deficits in adaptive functioning.

6         Claimant has failed to show additional and significant work-related limitations which would

7    raise his condition to the Listings level.  Claimant does little more than point out additional mental

8    symptoms as well as his physical impairments of hepatitis and alleged back pain.  (Court Doc. 15).

9    He does not identify how these alleged mental and physical impairments and symptoms cause him

10   substantial functional limitation.  Although claimant offers citations to the record, he provides no

11   substantial reasoning as to why he meets or equals Listing 12.05C by way of the second prong of the

12   two-prong test.  (Court Doc. 15).  A review of the record reveals that claimant's condition does not

13   medically meet or equal the criteria for Listing 12.05.  Accordingly, the undersigned finds that the

14   ALJ's step three finding is without error.

15   **C.  Develop the Record**

16        Claimant next contends that the ALJ erred by failing to fully and fairly develop the record in

17   this case.  (Court Doc. 15).  Claimant's main argument regarding the ALJ's duty to fully and fairly

18   develop the record is that the ALJ failed to order further testing in light of the report of examining

19   medical professional Dr. McCray, which allegedly suggested that additional psychological testing

20   was needed to help clarify claimant's diagnosis and limitations.  (Court Doc. 15).

21        The ALJ has a duty to fully and fairly develop the record.  Brown v. Heckler, 713 F.2d 441,

22   443 (9th Cir. 1983).  The ALJ is required to take steps to obtain additional evidence where the

23   medical evidence of record is insufficient to determine whether a claimant is disabled.  20 C.F.R. §§

24   404.1512(e), 416.912(e).  If a claimant can demonstrate prejudice or unfairness as a result of the

25   ALJ's failure to fully and fairly develop the record, the decision may be set aside.  Vidal v. Harris,

26   637 F.2d 710, 713 (9th Cir. 1991).  Accordingly, with respect to the ALJ's duty to develop the record,

27   the Ninth Circuit places the burden of proving prejudice or unfairness on the claimant.

28   ///

12

1    Claimant asserts that the ALJ erred by failing to order further psychological testing given the

2   report of Dr. McCray.  (Court Doc. 15).  Dr. McCray examined claimant on January 10, 2001.  (AR

3   158-162).  She reported that claimant was able to follow instructions and two-step commands, and,

4   although he reported difficulty hearing with his left ear, his general sensory functioning appeared to

5   be grossly intact and he was able to understand normal conversational speech.  (AR 160).  On his

6   mental status exam, claimant was oriented to person, place and time, he displayed adequate attention

7   and concentration for conversation, his speech was 100% intelligible, his memory for immediate,

8   recent and remote events appeared to be grossly intact and he was easily able to recall salient pieces

9   of personal history.  (AR 160).  Although Dr. McCray reported claimant's fund of knowledge,

10   insight and judgment were limited, she indicated he was able to perform oral mathematical

11   calculations, his verbal reasoning was adequate, his proverb interpretation was concrete, his ability to

12   form abstract ideas was adequate, his thought process was logical and linear and there was no

13   impairment with regard to thought or content.  (AR 160).  Based on her evaluation, Dr. McCray

14   diagnosed claimant with a depressive disorder, with psychotic features, intermittent explosive

15   disorder, borderline intellectual functioning and a personality disorder, not otherwise specified.

16   (AR 161).

17    The undersigned agrees with the Commissioner that claimant's characterization of

18   Dr. McCray's statements of a "need" for further testing is misconstrued.  (Court Doc. 16, p. 10).

19   Dr. McCray noted that her psychometric results "should be interpreted with caution, insofar as it was

20   unclear whether [claimant] was motivated to put forth full effort on psychometric tasks."  (AR 160).

21   She further indicated that claimant's performance on the Rey 15 Item Memory Test II was consistent

22   with low effort.  (AR 160).  As a result, Dr. McCray indicated that "[m]ore psychological testing

23   would be helpful in defining the nature and extent of [claimant's] difficulties."  (AR 160).  She noted

24   that additional cooperating documentation would be helpful with regard to a specific diagnosis.

25   (AR 160).  Dr. McCray does not indicate that further evaluation is necessary but rather it would be

26   helpful due to claimant's apparent lack of effort.  Based on the foregoing, the undersigned finds that

27   Dr. McCray's notation that further psychological testing would be helpful pertains to her opinion that

28   ///

1   claimant was not cooperating and not putting forth full effort on the tests, not because more

2   information was necessary.

3          In any event, the ALJ reviewed and discussed claimant's complete mental health history.

4   (AR 19-23).  The ALJ referenced medical reports from 1997 to 2002, including reports from

5   reviewing state agency medical professionals, and summarized and discussed claimant's

6   administrative hearing testimony.  (AR 19-23).  Accordingly, the ALJ made sufficient efforts to

7   obtain evidence of claimant's mental health condition prior to making his determination in this case.

8          With regards to claimant's alleged hearing loss, there is no objective evidence of record,

9   other than claimant's own statements[1], that he had a left ear hearing loss.  As noted above, although

10  claimant reported left ear hearing loss to Dr. McCray, Dr. McCray noted that claimant was able to

11  understand normal conversational speech and displayed adequate attention and concentration for

12  conversation.  (AR 160).  In addition, examining physician, David Thomas Jones, M.D., noted on

13  January 7, 2001, that claimant's hearing was grossly intact and that "he hears conversational speech

14  in the room."  (AR 157).  Moreover, a review of the administrative hearing transcript reveals no

15  complaints by claimant of difficulty hearing or following the questioning at the administrative

16  hearing.  (AR 27-52).  Thus, as noted by the Commissioner, it is reasonable to assume that the ALJ

17  observed that claimant had no difficulties with hearing.  (Court Doc. 16, p. 10).  Based on the

18  foregoing, additional hearing testing was not warranted in this case.

19         The record was not ambiguous and was adequately complete to formulate an opinion

20  regarding claimant's mental functioning and ability to hear.  Since there was sufficient evidence in

21  the record from which the ALJ could make his determination, further inquiry regarding claimant's

22  mental condition and alleged hearing loss was not required.  Accordingly, the ALJ fulfilled his duty

23  of fully and fairly developing the record in this case, and claimant has failed to demonstrate any

24  prejudice or unfairness.

25  ///

26  ///

27  ────────────────

28          [1]The ALJ found that claimant's allegations were not wholly credible (AR 22) and claimant does not contest the
    ALJ's credibility finding in this case.

14

**D. Residual Functional Capacity Assessment**

Claimant lastly contends that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence.  (Court Doc. 15).  Claimant specifically argues that the ALJ failed to properly assess the medical assessment forms completed by treating psychiatrist, Charles Edwards, M.D.  (Court Doc. 15).

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989).  However, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 744, 751 (9th Cir. 1989) (citations omitted); see also 20 C.F.R. § 404.1527.  To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence.  Flaten v. Secretary of Health and Human Serv., 44 F.3d 1453, 1463 (9th Cir. 1995); Fair, 885 F.2d at 605.  Historically, the Ninth Circuit courts have recognized conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain, as specific legitimate reasons for disregarding the treating physician's opinion.  Flaten, 44 F.3d at 1463-64; Fair, 885 F.2d at 604.

On June 21, 2001, Dr. Edwards filled out a complete medical report (mental) form (AR 202) and a medical assessment form (AR 203-207).  Dr. Edwards noted on the medical report that his clinical findings consisted of unstable mood, paranoid ideation and poor impulse control.  (AR 202).  He indicated his treatment consisted of "Medication Support Services" and that claimant's response was "Improved stability of Mood."  (AR 202).  On the medical assessment form, Dr. Edwards marked that claimant's ability was fair, defined as ability to function is limited but satisfactory, in all eight areas of making occupational adjustments, in two out of three areas of making performance adjustments and in all four areas of making personal/social adjustments.  (AR 203, 205).  He marked that claimant's ability was poor, defined as ability to function is seriously limited but not precluded, only in the area of understanding, remembering and carrying out complex job instructions.  (AR 205).  Dr. Edwards noted that claimant has the ability to manage funds and an improved stability in

1   mood, but gets irritable easily, has a low threshold for frustration, and can get paranoid that people

2   are watching him.  (AR 204, 206, 207).  He further noted that claimant's "medical issues, head

3   injuries, and . . . low threshold for frustration makes it very difficult for him to work."  (AR 206).

4   These reports of Dr. Edwards were on "check-box" forms.  (AR 202-207).  A check-box form is

5   entitled to little weight.  <u>Crane v. Shalala</u>,76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's

6   rejection of a check-off report that did not contain an explanation of the bases for the conclusions

7   made was permissible).

8          The ALJ found that Dr. Edwards' opinions on the check-box forms were unsupported by

9   clinical findings and thus gave his opinions on these forms little weight.  (AR 23).  The ALJ noted

10   that the only service claimant received from Dr. Edwards was medication support, and Dr. Edwards

11   did not consider therapy to be required for claimant's condition.  (AR 23).  The ALJ further indicated

12   that Dr. Edwards conceded that claimant's treatment had resulted in improved stability of mood, and

13   claimant's treatment records generally indicated that claimant's mood was euthymic.  (AR 23).  The

14   undersigned agrees with the ALJ's assessment.

15          A review of the record reveals that Dr. Edwards treated claimant as early as May 1, 1997.

16   (AR 151).  The record indicates that Dr. Edwards prescribed medication for claimant's mental health

17   issues from May 1, 1997 through at least October 25, 2000, however, the medical notes do not

18   indicate that claimant received any other form of treatment other than medication.  (AR 145-151).

19   On July 1, 1998, Dr. Edwards saw claimant for a medical evaluation and refills.  (AR 142).  He

20   noted claimant reported medical compliance and some improvements.  (AR 142).  On November 25,

21   1998, Dr. Edwards increased claimant's medication.  (AR 141).  On March 3, 1999, claimant

22   reported stable improvement of his mood since increasing his medication.  (AR 139).  On April 28,

23   1999, Dr. Edwards indicated that claimant's apparent reliable medication schedule had led to an

24   apparent overall stable mood with undisturbed sleep and appetite patterns.  (AR 134).  On July 7,

25   1999, claimant again reported with a stable, euthymic mood and undisturbed sleep and appetite

26   patterns following reliable medication compliance.  (AR 134).  Throughout the end of 1999 and into

27   June of 2000, claimant reported to Dr. Edwards with reliable medical compliance and improved

28   results.  (AR 125-127).  However, on September 21, 2000, claimant indicated he quit taking his

16

prescribed medication, thinking he would be fine. (AR 124). Claimant stated, as a result of not taking his medication, he had much difficulty, was depressed, had poor impulse control and had poor sleep patterns. (AR 124). On October 25, 2000, Dr. Edwards reported that claimant was feeling much better since restarting his medication, his mood was euthymic and stable and his sleep and appetite patterns were undisturbed. (AR 124).

In accord with the ALJ's findings, Dr. Edwards indicated that claimant's treatment had resulted in improved stability of mood, and claimant's treatment records generally indicated that claimant's mood was euthymic. (AR 23). In addition, if claimant's mental problems were debilitating, as claimant alleges Dr. Edwards' findings demonstrate, one would assume that Dr. Edwards would have recommended a heightened form of treatment, or a form of treatment other than medication, such as routine psychiatric counseling or therapy. The record reflects that the ALJ correctly assessed that Dr. Edwards did not refer claimant to any such counseling or therapy and only prescribed claimant with anti-depressant medications. (AR 23). The medical record, including the notes from Dr. Edwards, demonstrates that claimant's symptoms were adequately controlled through medication. (AR 22). Moreover, as noted by the ALJ, the assessment forms did not indicate any clinical findings to support Dr. Edwards' assessment. The ALJ thus provided specific, legitimate reasons, supported by substantial evidence, for rejecting Dr. Edwards' opinions as related in his June 21, 2001, complete medical report (mental) and medical assessment form. (AR 202-207).

The ALJ concluded that claimant has the RFC to perform all work related activities except that he can lift and carry only up to 50 pounds occasionally and up to 25 pounds frequently, can only occasionally climb, balance, stoop, kneel, crouch and crawl, must avoid unprotected heights and hazardous, moving machinery, cannot perform tasks that require hearing in both ears, can perform only jobs that consist of one and two-step processes that require only simple instructions, must have relatively restricted contact with the public and with co-workers, and can work in the presence of others, but should not be part of a cooperative process or work team. (AR 22-23). The ALJ evidenced and discussed these limitations in his written decision, and claimant offers no credible evidence to contradict the ALJ's RFC determination. The ALJ's findings regarding claimant's limitations and RFC are supported by the weight of the evidence of record and are based on proper

1  legal standards.  Thus, there is no error with regard to the ALJ's determination regarding claimant's

2  RFC in this case.

3                                                    **CONCLUSION**

4          For the reasons outlined above, the undersigned finds no error in the ALJ's analysis.  As

5  such, the Commissioner's decision to deny claimant disability benefits is supported by substantial

6  evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court

7  DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

8          The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant

9  Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Jeffery A. Ring.

10

11  IT IS SO ORDERED.

12  **Dated:    May 3, 2005**                        **/s/ Theresa A. Goldner**
    j6eb3d                                       UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28